**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

Jane Doe J.H., *an individual,*

                     Plaintiff

     Vs.

Days Inns Worldwide, Inc. d/b/a Days
Inn & Suites by Wyndham Tampa/Raymond
James Stadium, a *foreign profit corporation;*
DOES 1-5 *individuals, businesses, or other
entities that participated and/or benefited by
and through the enterprise operated by the
other Defendants*

              Defendants.

_____/

Case No. 8:25-cv-878

**COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY
TRIAL**

**COMPLAINT**

**COMES NOW**, Jane Doe J.H., by and through her undersigned counsel,

files this verified complaint for damages and jury demand against Defendants

Days Inns Worldwide, Inc. d/b/a Days Inn & Suites by Wyndham

Tampa/Raymond James Stadium and DOES Johns (collectively "Defendants")

makes the following averments:

**PARTIES**

1.    Plaintiff, Jane Doe J.H. ("Plaintiff"), is a natural person and resident

of Marion County, Florida. Plaintiff is a survivor of sex trafficking who was

victimized as a minor and is now over the age of majority and otherwise *sui juris.*

2.      Defendant Days Inns Worldwide, Inc., is a Florida Foreign Profit Corporation, doing business as Days Inn & Suites by Wyndham Tampa/Raymond James Stadium, located at 5405 N Church Ave, Tampa, FL 33614, and can be served with this complaint via its registered agent Corporate Creations Network Inc. 801 US Highway 1 North Palm Beach, Florida 33408.

3.      Defendant DOES individuals, businesses, or other entities that participated and/or benefited by and through the enterprise operated by the other Defendants whose identities are presently unknown to the Plaintiff, may have also contributed to the acts and omissions alleged herein. Plaintiff reserves the right to amend this Complaint to include additional parties as discovery progresses.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 because this action arises in the Constitution, laws, or treaties of the United States, namely, the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. Section 1591, 1595. Additionally, this Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within

this judicial district. Specifically, the Defendants' misconduct and omissions led to injuries sustained by the Plaintiff within this district. Additionally, the Defendants reside, conduct business, and operate within this district, further establishing proper venue.

3. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves parties that are citizens of different states.

4. In addition, Plaintiff invokes the supplemental jurisdiction of this Court with respect to claims based on laws of the State of Florida or any other jurisdiction pursuant to 28 U.S.C. Section 1367.

5. Accordingly, this Court has both subject matter jurisdiction and proper venue over this action.

## INTRODUCTION

6. This action is brought against Defendants for damages and other relief under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1591, 1595, and related claims arising from Plaintiff's victimization and exploitation through human trafficking.

7. Plaintiff was a minor at the time, subjected to forced commercial sex acts through coercion, fraud, and deception by the individual Defendants, who acted in concert to exploit her vulnerabilities. The hotel and motel chains, through

their employees, facilitated and profited from these activities by knowingly harboring and accommodating traffickers and their victims.

8. Plaintiff was subjected to coercion, threats, and intimidation. During this period, she was harbored and forced to engage in commercial sex for the financial benefit of the Defendants, her traffickers, and other individuals who exploited her.

9. Plaintiff is a victim of human sex trafficking as defined by the William Wilberforce Trafficking Victims Protection Act (TVPA) and its reauthorizations under the TVPRA. Like many victims, she was drawn into trafficking after a childhood marred by abuse and neglect.

10. As a survivor, the Plaintiff brings this action under the TVPRA and its amendments to seek compensation from those who financially benefited from and profited from her trafficking within their motels and hotels.

11. The TVPRA defines "sex trafficking" under 22 U.S.C. § 7102(11)(12) as: "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act." The statute further defines "severe forms of trafficking in persons" to include "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age."

12. Hotels and motels play a significant role in sex trafficking and are uniquely positioned to identify and prevent such activities on their premises.

13. As hotel operators, the local motel, its franchisee, and the franchisor-controlled training, policies, and the implementation of anti-trafficking measures for their properties, including the locations where the Plaintiff was trafficked.

14. Upon information and belief, Defendants had knowledge of the prevalence of sex trafficking within the hotel industry, specifically at their own motels, yet failed to take reasonable steps to prevent Plaintiff from being trafficked, prioritizing profit over safety.

15. Defendants knew or should have known that traffickers employ threats, coercion, and manipulation to compel victims, including the Plaintiff, to engage in commercial sex acts within their establishments.

16. The passage of the TVPRA in 2008, along with other legislative and judicial responses, placed Defendants on notice of the likelihood that illegal sex trafficking activities were occurring on their premises, necessitating increased vigilance and proactive countermeasures.

17. Defendants participated in these criminal activities by renting rooms to individuals (the Plaintiff, her traffickers, or the johns) that the Defendants knew or should have known were involved in sex trafficking involving the Plaintiff.

18.    Defendants financially benefited from the sex trafficking occurring on their premises by collecting revenue from room rentals, despite the clear indicators of trafficking-related activities.

19.    The franchisor further benefited financially through franchise fees and other profits derived from the overall brand's profitability while failing to implement adequate policies to prevent trafficking.

20.    As owners, operators, managers, and controllers of the subject hotels, Defendants knew or should have known, based on numerous well-documented indicators, that sex trafficking and other criminal activities were occurring at their motels due to their malfeasance, negligence, or intentional disregard for the safety and well-being of guests.

21.    Defendants had a duty to properly train employees—including front desk staff, housekeeping, security, and management—to identify and respond to red flags indicative of sex trafficking. As early as 2012, the American Hotel Lodging Association (AHLA) and ECPAT-USA (now known as PACT—Protect All Children from Trafficking) provided training materials, videos, and guidelines for recognizing and addressing human trafficking within hotels and motels.

22.    Defendants, by and through their agents, employees, and staff, were aware of and/or should have been aware of numerous warning signs of sex trafficking, including:

a. Victims exhibiting malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and unusual behavior; Victims lacking freedom of movement or being constantly monitored;

b. Victims dressed in sexually provocative clothing;

c. Requests for additional housekeeping services, such as towels and linens, while simultaneously denying staff entry to the room;

d. Few or no personal belongings in the room;

e. Presence of sex paraphernalia, including condoms, lubricants, and bodily fluids on sheets and towels;

f. Payments made in cash, prepaid credit cards, or other cash substitutes;

g. Guests checking in with local IDs or addresses;

h. Drug paraphernalia, including needles, orange caps, cigar wrappers, and powder residue; and

i. Other red flags.

23. Defendants' failure to act, motivated by financial greed and negligence, allowed their hotel and motel properties to become hubs for sex trafficking, in violation of the TVPRA, 18 U.S.C. § 1595.

24. While Defendants profited from room occupancy, including rental fees, food and beverage sales, ATM fees, and increased property values, Plaintiff

suffered repeated sexual exploitation, emotional distress, bodily injuries, and mental harm at the hands of her traffickers and those who purchased her for sex.

25.    Plaintiff sues Defendants for violations of the TVPRA, as they knowingly benefited from sex trafficking, harboring, and facilitating Plaintiff's victimization in violation of 18 U.S.C. § 1591(a) and (b).

26.    Defendants, as franchisors, entered into agreements with their franchisees, granting them the use of the brand's name, goodwill, reservation systems, and marketing services while requiring adherence to corporate policies and procedures.

27.    In return, the franchisor received franchise fees, commissions, and other financial benefits from the franchisee's operations.

28.    Industry-wide standards, guidelines, and training programs have long existed to educate hotel management and employees about recognizing and preventing trafficking, which Defendants either ignored or failed to implement.

29.    Any reasonably trained hotel employee witnessing Plaintiff, her traffickers, or her sex buyers would have recognized numerous indicators of abuse, yet Defendants chose profit over her safety.

30.    As franchisors, Defendants were uniquely positioned to identify and mitigate the use of their brand's facilities for illicit activities, yet failed to enforce

policies, procedures, or training necessary to combat trafficking within their properties.

31.    At all relevant times, Defendants failed to properly train, supervise, manage, educate, and control their franchisees regarding sex trafficking prevention, rendering them liable for their franchisees' acts and omissions under the doctrine of *respondeat superior*.

32.    Defendants' franchisees operated under the agency and apparent authority of Defendants, thereby binding Defendants to the acts and omissions of their franchisees.

## FACTS

33.    Like so many women who fall victim to sex trafficking, the Plaintiff was a minor at the time when she was sexually abused and assaulted by her father's adult associate, who gained access to her through family connections.

34.    After being assaulted, the Plaintiff fled home and lived with friends, and a friend suggested she could earn money by dancing at Tampa-area strip clubs. Plaintiff went to two different strip clubs in the Tamp area, where she was turned down because she was underage.

35.    Plaintiff applied for work as a dancer at Lipstixx Nightclub (the "Club") in Tampa and was allowed to work as a dancer/stripper despite being only 16 years old and lacking valid identification.

36.    The Club featured Plaintiff's image in promotional materials while she was a minor.

37.    The Club owners and associates, while complete knowledge of Plaintiff as a minor permitted third parties, including the Defendants herein, to traffic the Plaintiff for commercial sex. Plaintiff was subjected to repeated sexual exploitation, including:

    i.   Coerced sex with multiple "Johns" and traffickers

    ii.  Forced participation in group sex parties

    iii. Physical beatings and drug administration to ensure compliance

    iv.  Deprivation of basic necessities (food, hygiene)

38.    On or about 1993, Plaintiff was subjected to prolonged and repeated acts of sexual exploitation and trafficking by Defendants at their premises located at 5405 N Church Avenue, Tampa, Florida 33614 (the "Premises").

39.    The trafficking operation involved systematic abuse, including:

    i.   Daily rapes over a 6–8-week period;

    ii.  Being coerced into sex with multiple buyers ("Johns"), pimps, and their associates daily;

    iii. Confinement, except for forced strip club appearances;

    iv.  Complete deprivation of personal freedom;

      v.  Physical violence and beatings;

     vi.  Administration of drugs to ensure compliance with traffickers'

demands; and

    vii.  Withholding of food, hygiene, and medical care.

40.    Plaintiff witnessed traffickers exchange money for her exploitation over 20 times. She was often unable to recall details of incidents due to being drugged and intoxicated by her traffickers.

41.    Defendants provided a haven for trafficking activities, with management and staff knowingly participating and enabling the operations. Specifically;

42.    Hotel employees, including management, observed and facilitated trafficking. For instance, a staff member entered the room where Plaintiff and other victims were held, examined the girls, and motioned to Plaintiff's trafficker, stating, "Not that one." The staff member selected another girl, who was sent to the office for sex.

43.    Defendants provided rooms to traffickers in secluded areas of the hotel, strategically placed out of sight of the road and tourists but within view of hotel staff.

44.    Multiple traffickers operated out of rooms at the hotel, which was notorious as a haven for prostitution and trafficking activities.

45. Defendants' failure to intervene or report the trafficking, despite clear and pervasive red flags, enabled the continued exploitation of the Plaintiff and other victims.

46. As a direct and proximate result of the trafficking and Defendants' complicity, Plaintiff has endured severe and lasting harm, including debilitating physical injuries, psychological trauma, and economic hardship. Diagnosed with juvenile fibromyalgia at age 17, a condition triggered by trauma, she suffers from chronic pain that severely limits her ability to work and perform daily tasks.

47. In addition, the Plaintiff has been diagnosed with PTSD, depression, and anxiety, leading to lifelong emotional suffering. Her experiences have profoundly impacted on her ability to form and maintain relationships, resulting in social isolation and difficulty establishing trust. The trauma has also caused significant economic harm, as she has been unable to sustain steady employment due to anxiety and chronic pain, leading to substantial lost income and diminished earning capacity.

48. Furthermore, the profound emotional toll has affected her role as a parent, forcing her to withdraw her children from school due to overwhelming anxiety, thereby disrupting their lives and further diminishing her quality of life and independence.

//

49.     As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered severe injuries, chronic pain, psychological trauma, economic hardship, and significant medical expenses, leading to lost wages and diminished earning capacity, all of which will be determined at trial.

### COUNT I
### CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Human Trafficking under 18 U.S.C. § 1595, § 1591; Fla. Stat. § 787.06)

50.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

51.     Under 18 U.S.C. § 1595, § 1591, and Fla. Stat. § 787.06, it is unlawful to knowingly recruit, entice, harbor, conspire, transport, provide, obtain, or maintain a person through force, fraud, or coercion for the purpose of sexual exploitation.

52.     Defendants, individually and collectively, knowingly benefited, financially or by receiving anything of value, from their participation in a venture that engaged in human trafficking and the sexual exploitation of the Plaintiff, in violation of 18 U.S.C. § 1591(a) and (b).

53.     Plaintiff, a minor at the time, was subjected to repeated sexual exploitation, physical abuse, and coercion while being harbored at the Defendants' hotel premises.

54.     Defendants knew or should have known that their properties were being used for sex trafficking operations. Defendants had actual or constructive

knowledge of these activities yet failed to take any reasonable steps to prevent, intervene, or report the trafficking taking place within their establishments.

55.    Defendants provided lodging and accommodations to Plaintiff's traffickers, despite numerous red flags, including but not limited to:

      i.   Frequent cash payments and prepaid credit card transactions;

     ii.   High foot traffic in and out of rooms rented by known traffickers;

    iii.   Requests for excessive towels and linens while simultaneously denying housekeeping services; d. Victims displaying signs of distress, malnourishment, physical abuse, and coercion;

    iv.   Defendants' employees observing and facilitating the trafficking activities; and

     v.   Explicit warnings from industry-wide anti-trafficking campaigns and guidelines.

56.    Defendants had the ability to detect and prevent the trafficking occurring on their premises through proper training, security measures, and adherence to widely accepted anti-trafficking protocols but deliberately failed to do so.

//

//

57.    Defendants' actions and omissions constitute direct participation in the Plaintiff's trafficking by harboring and benefiting from the illicit conduct of traffickers, thereby violating 18 U.S.C. § 1591.

58.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe and lasting harm, including, but not limited to, sexual violence, physical abuse, psychological trauma, chronic pain, economic hardship, and a diminished quality of life.

59.    Plaintiff is entitled to damages pursuant to 18 U.S.C. § 1595 and Fla. Stat. § 787.06, including compensatory damages for pain and suffering, medical expenses, lost wages, and punitive damages against the Defendants for their willful and wanton disregard for the Plaintiff's safety and well-being.

**WHEREFORE**, the Plaintiff demands judgment against all Defendants, jointly and severally, for actual damages, compensatory damages, punitive damages, costs, attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT II
## CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Negligence and Premises Liability)

60.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

//

61.     At all relevant times, Defendants owned, operated, controlled, or otherwise managed the premises where the Plaintiff was trafficked and harmed.

62.     Defendants owed Plaintiff, as an invitee or lawful guest, a duty of reasonable care to maintain their premises in a safe condition and to protect against foreseeable criminal acts, including human trafficking.

63.     Specifically, Defendants had a duty to ensure that their property was not used as a haven or venue for criminal activities, including but not limited to human trafficking, exploitation, and abuse.

64.     Defendants breached their duty of care by failing to take reasonable steps to prevent foreseeable criminal conduct on their premises. Such failures include, but are not limited to:

    i. Failing to implement and enforce anti-human trafficking policies, practices, and procedures;

    ii. Failing to train staff to recognize and appropriately respond to signs of trafficking and abuse;

    iii. Failing to monitor their premises for indicators of trafficking activity, including frequent short-term visitors, signs of physical or emotional distress among occupants, and irregular or suspicious transactions involving cash payments;

iv. Allowing continued use of their property for illicit activities despite obvious red flags and indicators;

v. Failing to notify or cooperate with law enforcement or appropriate authorities upon observing suspicious or unlawful activity on their premises.

65. These acts and omissions by Defendants constitute both general negligence and premises liability under Florida law.

66. Defendants knew or should have known that the failure to act on such warning signs and provide a secure environment would likely result in harm to vulnerable individuals, including the Plaintiff.

67. As a direct and proximate result of Defendants' negligence and failure to maintain a safe premises, Plaintiff suffered prolonged trauma, severe emotional distress, physical injuries, pain and suffering, humiliation, and loss of dignity.

68. Plaintiff continues to experience lasting physical and psychological effects due to Defendants' failure to meet their duties under Florida law.

69. Plaintiff is entitled to recover all damages allowed under Florida law, including but not limited to compensatory damages for physical injuries, emotional distress, past and future medical expenses, and all other relief the Court deems just and proper.

//

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, for actual damages, compensatory damages, punitive damages, costs, attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT III
## CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Intentional Infliction of Emotional Distress)

70. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

71. Under Florida law, a claim for Intentional Infliction of Emotional Distress ("IIED") requires: a. Extreme and outrageous conduct by the defendant; b. Intent to cause, or reckless disregard of the likelihood of causing, emotional distress; c. Causation; and d. Severe emotional distress suffered by the plaintiff.

72. Defendants engaged in extreme and outrageous conduct by knowingly permitting, facilitating, and profiting from human trafficking and the sexual exploitation of the Plaintiff, a minor.

73. Defendants allowed traffickers to use their premises for illegal commercial sex trafficking, despite obvious red flags indicating that Plaintiff was being held against her will, subjected to daily rapes, physical beatings, and coerced drug use.

74. Defendants' employees, including management, actively participated in the trafficking scheme by:

i. Providing rooms in secluded areas of the hotel where traffickers operated freely, without oversight;

ii. Observing, yet failing to intervene, as traffickers and sex buyers repeatedly exploited Plaintiff over a 6–8-week period;

iii. Selecting victims for trafficking activities, as evidenced by a staff member inspecting the girls and choosing another for commercial sex while leaving Plaintiff behind;

iv. Turning a blind eye to clear signs of trafficking, including distressed victims, physical injuries, and repeated instances of money being exchanged for sex on the premises.

75. Defendants acted with actual knowledge or reckless disregard of the severe harm they were enabling.

76. Despite witnessing repeated trafficking transactions, Plaintiff's visible distress, and the systematic abuse within their establishment, Defendants failed to intervene, report, or implement any safeguards to prevent the continued exploitation.

77. Defendants' inaction was not mere negligence—it was a deliberate indifference to Plaintiff's suffering, ensuring that their business profited from illicit activities.

//

78.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe and prolonged trauma, including:

i.   Juvenile fibromyalgia, a chronic pain condition triggered by trauma, diagnosed at age 17;

ii.  Post-Traumatic Stress Disorder (PTSD), depression, and anxiety, severely affecting her emotional well-being, ability to work, and quality of life;

iii. Loss of earning capacity, as her severe anxiety and chronic pain have prevented her from maintaining steady employment;

iv.  Social isolation and inability to maintain relationships, caused by the psychological effects of the abuse; and

v.   Impaired ability to parent, leading to disruptions in her children's lives due to overwhelming anxiety.

79.     Defendants' extreme and outrageous conduct caused severe emotional distress to Plaintiff, manifesting in debilitating psychological and physical conditions, including:

i.   Chronic nightmares and flashbacks of the abuse;

ii.  Severe anxiety and panic attacks, making it difficult to leave her home or function in social or professional settings;

//

    iii.  Emotional numbness and dissociation, affecting her ability to engage in daily activities or form meaningful relationships;

    iv.  Depression and suicidal ideation, resulting from the prolonged trauma and lack of justice; and

    v.  Economic devastation, as her mental and physical conditions prevent her from sustaining long-term employment.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, for actual damages, compensatory damages, punitive damages, costs, attorneys' fees, and any other relief deemed just and proper by the Court.

<u>**COUNT IV**</u>
<u>**CAUSE OF ACTION AGAINST ALL DEFENDANTS**</u>
(<u>*Respondeat Superior*</u>)

80.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

81.    At all relevant times, Defendants owned, operated, managed, franchised, and/or controlled the Hotel where Plaintiff was sex trafficked and exploited. Defendants employed various individuals, including management and staff, who were acting within the course and scope of their employment.

82.    Under the doctrine of *respondeat superior*, an employer is liable for the wrongful acts of its employees committed within the scope of their employment,

particularly when those acts further the employer's business or benefit the employer financially.

83.    Defendants' agents and employees—including front desk staff, housekeepers, and management—were acting within the scope of their employment when they knowingly or negligently permitted Plaintiff's trafficker to use the Hotel for illegal commercial sex trafficking.

84.    These employees rented rooms to known traffickers, observed signs of trafficking such as Plaintiff's malnourished appearance, high foot traffic of unrelated adult males, cash transactions, excessive housekeeping requests, and third-party bookings, and yet failed to report or intervene.

85.    These acts were not isolated but consistent with an ongoing pattern of trafficking on the property. Defendants' employees had actual or constructive knowledge of the trafficking activity and, through their inaction, enabled the continued exploitation of the Plaintiff.

86.    Defendants benefited financially from its employees' acts and omissions, including the revenue from repeated room rentals used for trafficking purposes. As such, the employees' failure to act directly served the business interest of the Defendants.

87.    Because the employees' negligent and/or knowing conduct occurred within the scope of their employment and furthered the Defendants' business

interests, Defendant is vicariously liable for their actions under the doctrine of *respondeat superior*.

88.    As a direct and proximate result of the acts and omissions of Defendant's employees and Defendant's vicarious liability under *respondeat superior*, Plaintiff suffered severe physical, emotional, and psychological harm.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, for actual damages, compensatory damages, punitive damages, costs, attorneys' fees, and any other relief deemed just and proper by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against all Defendants, jointly and severally, and grant the following relief:

1. All compensatory damages available for the losses described with respect to each cause of action;

2. Past and future medical expenses, as well as the costs associated with past and future life care;

3. Past and future mental distress;

4. Consequential and/or special damages;

5. All available economic damages, including without limitation, conscious pain and suffering, past, present and future injuries, physical injuries,

emotional/mental and psychiatric/psychologic injuries, and loss of enjoyment of life;

6. Disgorgement of profits obtained through unjust enrichment;

7. Restitution;

8. Reasonable and recoverable attorneys fees as allowed by TVPRA;

9. Punitive damages with respect to each cause of action;

10. Costs of this action;

11. Pre-judgment and all other interest recoverable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims triable as of right.

//

//

//

//

//

//

//

//

//

//

//

## VERIFICATION

Under penalties of perjury, I, Jane Doe J.H., declare that I have read the

foregoing and that the facts alleged are true to the best of my knowledge and belief.

*Jane Doe J.H.*
_____
Jane Doe J.H.

Dated: April 8th, 2025

THE LAW OFFICES OF TRAVIS R. WALKER, P.A.

By: __/s/ Travis R. Walker___
Travis R. Walker Esq.
Florida Bar No. 33693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis@traviswalkerlaw.com
izzy.leiva@traviswalkerlaw.com
service@traviswalkerlaw.com